# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSEPH MAZZARELLA and WENDY MAZZARELLA,<br>    Plaintiffs,<br><br>    v.<br><br>AMICA MUTUAL INSURANCE COMPANY,<br>    Defendant. | No. 3:17-cv-598 (SRU) |

## RULING ON MOTION TO DISMISS

In the present insurance dispute, Amica Mutual Insurance Co. ("Amica") has moved to dismiss the claims brought against it by Joseph and Wendy Mazzarella. The Mazzarellas complaint alleges that (1) Amica breached its contract with the Mazzarellas by denying coverage under their homeowner's policy for damage to their basement walls and various other parts of their house; (2) Amica breached the implied covenant of good faith and fair dealing by denying coverage; and (3) Amica committed unfair and deceptive practices proscribed by the Connecticut Unfair Insurance Practices Act ("CUIPA"), as enforced through the Connecticut Unfair Trade Practices Act ("CUTPA"). Because the Mazzarellas have failed to show their policy with Amica covered the alleged "direct physical loss" damage to their home, I grant the motion and dismiss the complaint in its entirety.[1]

---

[1] The Mazzarellas argue that Amica's Motion to Dismiss should be denied because it was untimely filed. Federal Rule of Civil Procedure 15(a)(3) provides: "[A]ny required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later." The Second Amended Complaint was filed and served on August 16, 2017. Twenty-one days later, on September 6, 2017, Amica filed this Motion to Dismiss. While technically untimely, I will not deny the motion for that reason. First, Amica correctly points out that the Mazzarellas have not alleged any prejudice from the delay. *See Cowan v. Cahill*, 2016 WL 5348567 at *3 (D. Conn. Sept. 23, 2016). Furthermore, "the Second Circuit prefers that district courts decide cases on their merits rather than by default." *Id.* Accordingly, I am reaching the merits of Amica's motion.

## I. Standard of Review

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiffs, and decide whether it is plausible that plaintiffs have a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (quotation marks omitted). Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (quotation marks omitted).

## II. Background

The Mazzarellas have resided at their home in Tolland, Connecticut since their house was constructed in 1992. Each year since 1992, the Mazzarellas have purchased primary homeowners insurance coverage from Amica. The relevant policy at issue in the instant case is Homeowners Policy No. 661106-22ZV ("the Policy"), which insured the Mazzarellas' home from November 17, 2015 through November 17, 2016.

On February 16, 2016, the Mazzarellas notified Amica of property damage to their residence. The damage included, inter alia, damage to the basement walls, upper walls, floors, tiles, windows, doors, and chimneys. 2nd Am. Compl., Doc. No. 37, at ¶ 15. On March 7, 2016, Amica responded and stated that it had insufficient information to determine the existence of coverage and informed the Mazzarellas that it would undertake an investigation of the damage. *Id.* at ¶ 16. On March 22, 2016, an investigation was conducted by Cianci Engineering, LLC ("Cianci"), A.E. Oberhaus, Inc. ("Oberhaus"), and GeoDesign, Inc. ("GeoDesign"). *Id.* at ¶ 17. Cianci issued an "Investigation of Damages" report to Amica on April 6, 2016 in which it determined that the claimed damage was the result, at least in part, of "ongoing exposure to water and oxygen." *Id.* at ¶ 18. GeoDesign issued an "Engineering Report" on July 12, 2016 in which it determined that the concrete in the residence contained a "'high and unusual' content of pyrrhotite[,]" which "oxidizes and reacts with the paste." *Id.* at ¶ 19. Within the Engineering Report, GeoDesign also issued a "Report of Petrographic Evaluation" in which it concluded that "oxidation of pyrrhotite due to exposure to water and oxygen infiltration damaged the Residence's cement basement walls." *Id.* at ¶ 20.

Approximately ten months after the Mazzarellas notified Amica of their property damage, and after three attempts by the Mazzarellas to obtain Amica's coverage position, Amica

3

notified them that the claimed damage was not covered under the Policy. *Id.* at ¶¶ 22, 23. In denying coverage, Amica asserted that the residence's damage did not qualify for "collapse" coverage. *Id.* at ¶ 24. Moreover, Amica asserted "numerous exclusions and conditions in the Policy," the exact nature of which were unspecified in the operative complaint.

On March 16, 2017, the Mazzarellas filed the instant suit in Connecticut Superior Court. Amica removed the case to this Court on April 12, 2017 and filed its first Motion to Dismiss. Docs. # 10, 11. The Mazzarellas filed an Amended Complaint on May 10, 2017 in which they alleged that Amica breached its policy by not covering the damage and cited two policy provisions under either of which Amica should have provided coverage: (1) direct physical loss; or (2) collapse. Doc. # 16. On May 24, 2017, Amica filed its Second Motion to Dismiss. Doc. # 21. At a hearing on the motion, I stated that the Mazzarellas' claimed loss did not qualify as a "collapse" due to the lack of abrupt falling down or caving in, and did not yet qualify as a "direct physical loss" because the Mazzarellas had failed to provide enough detail to remove the damage from the policy exclusions that likely applied. Accordingly, I orally granted Amica's Second Motion to Dismiss without prejudice on July 12, 2017. Doc. # 33.

On August 16, 2017, the Mazzarellas filed the operative Second Amended Complaint. Doc. # 37. In Count One, they allege that Amica breached the Policy by failing to cover the damage done to their home, and seek coverage under only the "direct physical loss" policy provision. In Count Two, the Mazzarellas allege that Amica's failure to cover the damage breached the implied covenant of good faith and fair dealing. In Count Three, the Mazzarellas allege that Amica violated the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a, *et seq.*, and the Connecticut Unfair Insurance Practices Act ("CUIPA"), Conn. Gen. Stat. § 38a-815, *et seq.*, by failing to cover their claimed damage and for engaging in a

business practice of denying coverage for claims involving the oxidation of concrete. Amica filed its Third Motion to Dismiss on September 6, 2017, alleging that the Policy explicitly excluded the claimed direct physical loss to the Mazzarellas' home, and, therefore, the Second Amended Complaint, in its entirety, should be dismissed. Doc. # 38. I heard oral argument on the motion on November 20, 2017 and took it under advisement. Doc. # 46.

**III. Discussion**

  A. <u>Count One: Breach of Contract</u>

The Mazzarellas claim in Count One of their Second Amended Complaint that Amica breached its policy by failing to cover the damage to their home, which should have been covered under the "Direct Physical Loss" provision of the Policy. The extent of their allegations is that there was "property damage" to their house including "damage to concrete basement walls, interior walls, floor tiles, subfloors and wood floors, interior doors and windows, and the chimney, as well as damage from rainwater." 2nd Am. Compl., Doc. No. 37, at ¶ 12. They further assert that the "damage" was as a result of the "infiltration of water and oxygen into pyrrhotite, an iron sulfide mineral found in the concrete." *Id.* at ¶ 13. Further, they allege that the "infiltration of water and oxygen caused oxidation, which led to the formation of sulfur acids, called an internal 'sulfate attack,' which damaged the concrete basement walls" of their home. *Id.* at ¶ 14. The Mazzarellas, however, failed to satisfy their initial burden of showing that they sustained a direct physical loss, and, in the alternative, any such damage was expressly excluded from the coverage Policy. They further failed to show that their damage should have been covered under a theory of "efficient cause." Accordingly, Count One is dismissed.

1. *Direct Physical Loss*

The burden is first on the Mazzarellas to "demonstrate that the loss suffered falls within the terms of the policy." *Yale Univ. v. Cigna Ins. Co.*, 224 F. Supp. 2d 402, 424 (D. Conn. 2002). The Mazzarellas cite to the Policy's "Section I – Perils Insured Against" which states that Amica "insure[s] against direct physical loss to property . . . ." 2nd Am. Compl., Doc. No. 37, at ¶ 35. *See also* Policy § I(A)(1) at pg. 9 (Doc. # 38-3). "Direct loss" is defined as "[a] loss that results immediately and proximately from an event." *England v. Amica Mutual Ins. Co.*, 2017 WL 3996394 at *7 (D. Conn. Sept. 11, 2017) (MPS). A "direct physical loss" has been interpreted to mean a "physical, tangible alteration to any property." *Id.*

The Mazzarellas provide no detail in support of their claim of this type of loss. They do not elaborate about the damage that has actually occurred to their home; they very thinly assert that there was "damage" to various portions of their house without further elaboration. Though they allege that the damage, whatever damage that may be, was caused by oxidation due to water and oxygen in the concrete, there is still insufficient factual detail to determine exactly what type of loss they are claiming. They briefly claim that the oxidation damaged the concrete basement walls, but two important questions still remain: (1) *what* damage was caused to the concrete basement walls (i.e., cracking, bulging, etc.); and (2) how were the *other* named areas of the house ("interior walls, floor tiles, subfloors and wood floors, interior doors and windows, and the chimney") damaged by this oxidation.

In their First Amended Complaint, the Mazzarellas alleged that the specific damage was an expansion within the concrete caused by the oxidation. Am. Compl. at ¶¶ 28, 31 (Doc. # 16). At oral argument on Amica's Motion to Dismiss that complaint, I pointed out that "gradual expansive reaction" sounded like bulging, which is specifically excluded under the Policy. Now, in their Second Amended Complaint, the Mazzarellas have omitted any allegation of expanding

concrete, and have not alleged any other type of damage in its place. The plaintiffs cannot survive a motion to dismiss simply by making their allegations too vague for the court to determine that they are the same allegations as those previously dismissed. It is the plaintiffs' initial burden to set forth the loss for which they seek coverage. *Yale Univ. v. Cigna Ins. Co.,* 224 F. Supp. 2d at 424.

Additionally, though not specifically pled, any claim by the Mazzarellas that the oxidation *itself* is the direct physical loss is without merit. A District Court recently granted a Motion to Dismiss in a case with substantially similar facts: *England v. Amica Mutual Ins. Co.*, 2017 WL 3996394 (D. Conn. Sept. 11, 2017) (MPS). There, the plaintiff specifically alleged, inter alia, that a chemical reaction occurring in concrete in her home was itself a direct physical loss. *England* at *6. In dismissing the complaint, the court stated that the term loss

> [I]ncludes perceptible harms that manifest as a consequence of triggering events—but does not include the triggering harms themselves. That the Policies specify that Amica provides coverage only for 'direct physical losses' further underscores that a covered loss is treated separately from its cause for the purposes of coverage, and must be in the form of a perceptible harm for a policyholder to claim coverage.

*Id.* The court further held: "[T]he chemical reaction itself, absent any physical manifestation in the Property marking a change to an unsatisfactory state, is not a 'direct physical loss' or other 'loss' under the Policy." *Id.* at *8. Therefore, any claim that the oxidation of the concrete is the "direct physical loss" must fail.[2]

Because the Mazzarellas failed to adequately allege that the damage to their home was a "direct physical loss," Count One must be dismissed.

---

[2] It is also important to note that the plaintiff in *England* specifically pleaded that the chemical reaction occurring in her concrete walls was a "direct physical loss" whereas here the Mazzarellas did not.

2. *Policy Exclusions*

Nevertheless, even if the Mazzarellas had adequately alleged direct physical loss, their damage would be expressly excluded from coverage under the terms of the Policy. Because Amica relies on exclusionary clauses to deny coverage, it bears the burden of demonstrating "that all the allegations within the complaint fall completely within the exclusion." *State Farm Fire & Cas. Co. v. Tully*, 322 Conn. 566, 575 (2016).

In response to the Mazzarellas claims of "direct physical loss," Amica points to a number of Policy exclusions, which expressly provide that the Policy does not cover direct physical loss to property caused by the following:

> (a) Wear and tear, marring, deterioration;
> …
> (f) Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings.

Mem. Supp. Amica's Mot. Dismiss, Doc. # 28-1, at 15. *See also* Policy § I(A)(2)(c)(6) at 10.

Subsection (a) excludes direct physical loss to property that results from, inter alia, "deterioration." Policy at 10. The *Merriam-Webster* definition of "deterioration" is "the action or process of becoming impaired or inferior in quality." *See* https://www.merriam-webster.com/dictionary/deterioration. On the basis of the thin allegations in the complaint, it appears that the weakened condition of the concrete, and any damage to the other named portions of the home (though the nature of such damage is unknown), was caused by the "deterioration" of the concrete. Accordingly, this exclusion would apply directly to the Mazzarellas' claim. So, too, would subsection (f). It is hard to imagine that the damage alleged, the infiltration of water and oxygen into the concrete causing oxidation, caused anything other than bulging and expanding concrete, which led it to crack. In fact, as previously mentioned, that is exactly the

8

kind of damage the Mazzarellas alleged in previous versions of their complaint. The damage the Mazzarellas complain of falls squarely within the subsection (f) exclusion to coverage.

Amica also cites to its Policy provision that excludes coverage for damage caused by "water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building … foundation … or other structure." Mem. Supp. Amica's Mot. Dismiss, Doc. # 38-1, at 16. *See also* Policy § I(A)(3)(c) at 12. The Mazzarellas directly allege that the damage to their home was as a result of water infiltrating their concrete basement walls and oxidizing. This Policy provision, therefore, directly excludes the Mazzarellas' claim from coverage.

Moreover, although the parties do not cite it, another provision of the Policy appears to apply to exclude loss caused by defective concrete. Section (B)(3) of the Exclusions provision of the Policy provides that Amica does not insure for "loss to property" that is caused by "[f]aulty, inadequate or defective . . . [m]aterials used in . . . construction . . . of part or all of [the] property." Policy at 13. If the defective concrete itself is the "loss to property," it seems to fall well within the exclusion relating to defective materials used to construct the property. *See Kim v. State Farm Fire & Cas. Co.*, 2017 WL 2766162, at \*6 (D. Conn. June 26, 2017) (granting summary judgment when policy excluded losses for defective materials and record evidence showed that the loss was result of defective concrete). Accordingly, even if the Mazzarellas had sufficiently alleged a "direct physical loss" to their home, there are numerous specific Policy provisions that would exclude coverage for the Mazzarellas' damage.

    3. *Efficient Cause*

In their Second Amended Complaint, the Mazzarellas have alleged that "the infiltration of water and oxygen into the Residence's concrete constitutes the 'efficient cause' of the

9

Residence's 'direct physical loss.'" 2nd Am. Compl., Doc. No. 37, at ¶ 41. The Mazzarellas did not assert an "efficient cause" allegation in either of their first two complaints. *See* Compl., Doc. # 1; Am. Compl., Doc. # 16. In their first complaint, the Mazzarellas alleged that they alerted Amica to the damage to their home "including cracking, crumbling, and discoloration in concrete, cracking, heaving, and separation of floors and tiles, warping and racking of windows and doors, and separation of chimneys from the Residence." Compl., Doc. # 1, at ¶ 23. The Mazzarellas cited the reports created by Amica's inspectors to allege that the water and oxygen created a "gradual expansive reaction" within the concrete walls and the oxidation created "significant expansive forces within the concrete" which caused it to "crumble and break apart." *Id.*, at ¶¶ 26, 31. In their Amended Complaint, the Mazzarellas alleged that they alerted Amica to the "significant property damage" in their home which they "'preliminarily believed … [resulted] from expansion of pyrite.'" Am. Compl., Doc. # 16, at ¶ 25. The Mazzarellas again cited the inspectors' reports to allege that the water and oxygen exposure created a "gradual expansive reaction" in the concrete, and the oxidation caused "significant expansive forces" within the concrete. *Id.*, at ¶¶ 28, 31. The Mazzarellas now allege, eighteen months after they first alerted Amica to the damage, that the water and oxygen infiltration was the "efficient cause" of the damage to their home.

"In the determination whether a loss is within an exception in a policy, where there is a concurrence of two causes, the efficient cause—the one that sets the other in motion—is the cause to which the loss is to be attributed, though the other cause may follow it and operate more immediately in producing the disaster." *Frontis v. Milwaukee Ins. Co.*, 156 Conn. 492, 499 (1968). "[W]hat is meant by proximate cause is not that which is last in time or place, not merely that which was in activity at the consummation of the injury, but that which is the

procuring, efficient, and predominant cause." *Id.* at 497-98. The "efficient cause" test "distinguishes between an excluded event which causes a loss … and a covered event which causes a loss in the form of an excluded event." *Farrell v. Royal Ins. Co. of America*, 989 F. Supp. 159, 165 (D. Conn. Mar. 31, 1997).

The Mazzarellas allege that the efficient cause of the direct physical loss was "the infiltration of water and oxygen into [their] concrete basement walls." Mem. Opp. Amica's Mot. Dismiss, Doc. # 40, at 7. Amica counters that the "direct cause of the alleged damage is not the infiltration of water, but rather the claimed chemical reaction and cracking of the deleterious concrete." Mem. Supp. Amica's Mot. Dismiss, Doc. # 38-1, at 18. Regardless of which is the efficient cause, the infiltration of water and oxygen or the chemical reaction, neither would be "a covered event." As previously mentioned, the Policy expressly precludes coverage for damage caused by "water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building … foundation … or other structure." Policy § I(A)(3)(c) at 12. The Policy further provides that Amica does not insure "for loss caused directly or indirectly by [water]. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss." Policy § I(A) at 12. Accordingly, any damage created by the infiltration of water into the concrete would not be covered under the Policy. Additionally, a chemical reaction within concrete does not constitute a "loss" under Amica's Policy and, therefore, cannot be covered as the "efficient cause" of the damage. *See England*, 2017 WL 3996394 at *8. Regardless of whether the water and oxygen infiltration came first, or the internal chemical reaction, neither can serve as an "efficient cause" to bring the Mazzarellas' damage under the terms of the Policy.

4. *Ensuing Loss*

The Mazzarellas have also alleged damage to parts of their home other than the basement. Specifically, they allege "direct physical loss" to the "interior walls, floor tiles, subfloors and wood floors, interior doors and windows, and the chimney" as a result of "water and oxygen infiltration." 2nd Am. Compl., Doc. No. 37, at ¶¶ 12, 36. The Policy has an "ensuing loss" provision that provides coverage for loss that ensues from damage that is excluded from coverage, so long as the ensuing loss is not precluded by any other policy provision. Policy § I(A) at 10. Although the Mazzarellas have not explicitly claimed that the damage to other parts of the home should be covered under this ensuing loss provision, I think it is prudent to address the issue.

"An ensuing loss occurs where there is a peril, i.e., a hazard or occurrence which causes a loss or injury, *separate and independent* but resulting from the original excluded peril, and this new peril is not an excluded one, from which loss ensues." *New London Cty. Mut. Ins. Co. v. Zachem*, 2012 WL 1292662, at *2 (Conn. Super. Ct. Mar. 29 2012), *aff'd*, 145 Conn. App. 160 (Conn. App. 2013) (emphasis added) (internal quotation marks omitted). Residual damage is not considered an "ensuing loss" if it was proximately caused by the non-covered event. *Sansone v. Nationwide Mut. Fire Ins. Co.*, 47 Conn. Supp. 35, 39 (Super. Ct. 1999), *aff'd*, 62 Conn. App. 526 (Conn. App. 2001) (denying coverage for losses sustained during repairs of damage caused by insect infestation because the infestation, which was not covered under the policy, proximately caused the repair damages). "Proximate cause has been defined as [a]n actual cause that is a *substantial factor* in the resulting harm." *Id.* (emphasis in original) (internal quotation marks omitted). In order to qualify as an "ensuing loss," there must be an "aggravating activity or event that caused [the] additional losses" other than the losses arising from the original damage. *Id.*

Courts have interpreted this type of provision to cover losses such as contamination from asbestos, lead, or other chemicals that are contained within building materials and released as a result of wear and tear on the property. *See Yale University v. Cigna Ins. Co.*, 224 F. Supp. 2d 402 (D. Conn. 2002). In such circumstances, the contamination is considered property loss that is "distinct" from wear and tear, a non-covered event, and, therefore, falls under the ensuing loss provision. *Id.* Further, "[w]here a property insurance policy contains an exclusion with an exception for ensuing loss, courts have sought to assure that the exception does not supersede the exclusion by disallowing coverage for ensuing loss directly related to the original excluded risk." *Id.* at 420 (internal quotation marks omitted).

Here, if the losses to the rest of the residence were proximately caused by and directly related to the infiltration of water into the concrete basement walls, and/or the subsequent oxidation within the concrete, then the losses are excluded from coverage. The Second Amended Complaint is vague regarding the alleged cause of the damage to parts of the home other than the basement, but it appears to me that the Mazzarellas are alleging that the damage to the basement caused the damage to other portions of the house. They do not allege any "distinct" loss or "separate and independent" incident that led to the damage to the walls, floors, doors, windows, and chimney. Accordingly, I read the Second Amended Complaint to allege that the damage to the basement proximately caused the damage to the remainder of the house and, therefore, the subsequent loss is not covered by the ensuing loss provision of the Policy.

The Mazzarellas have failed to state a plausible claim against Amica for breach of contract, and, accordingly, I dismiss Count One pursuant to Fed. R. Civ. P. 12(b)(6).

13

B. <u>Count Two: Breach of the Implied Covenant of Good Faith and Fair Dealing</u>

The Mazzarellas allege in Count Two that Amica breached its implied duty of good faith and fair dealing by: (1) handling their property damage claim in bad faith by failing to issue timely determination of coverage and mishandling their claims of damage to their "chimney, siding, and framing"; (2) failing to set forth a reasonable basis under the Policy to justify denial of coverage by focusing only on the "collapse" exclusion and ignoring the Policy's coverage for "direct physical loss"; (3) attempting to enforce the "collapse" coverage in a manner that violates public policy; and (4) "acted intentionally, willfully, wantonly, and/or in reckless disregard of its obligations under the Policy and/or applicable law." 2nd Am. Compl., Doc. No. 37, at Count 2, ¶¶ 51-54.

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and in its enforcement." *Warner v. Konover*, 210 Conn. 150, 154 (1989). "A breach of that implied covenant involves a defendant dishonestly imped[ing] the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract. [B]ad faith is not actionable apart from a wrongful denial of a benefit under the policy, however. If a plaintiff's breach of contract claim fails, so too does his [or her] claim of bad faith denial of coverage." *Agosti v. Merrimack Mut. Fire Ins. Co*., 2017 WL 3710786 at *7 (D. Conn. Aug. 28, 2017) (SRU) (citations omitted) (internal quotation mark omitted).

Amica asserts that if I dismiss the Mazzarellas' breach of contract claim, then I should also dismiss the Mazzarellas' breach of the implied covenant of good faith and fair dealing claim "as a matter of law." Mem. Supp. Amica's Mot. Dismiss, Doc. No. 38-1, at 25. Because I conclude that I must dismiss the Mazzarella's claim for breach of contract—and hold that Amica did not wrongfully deny a contractually mandated benefit under the Policy—I also dismiss the

Mazzarella's claim for breach of the implied covenant of good faith and fair dealing pursuant to Fed. R. Civ. P. 12(b)(6).

C. Count Three: Violations of CUTPA/CUIPA

The Mazzarellas allege in Count Three that Amica violated CUTPA based on alleged CUIPA violations, which prohibits unfair competition and/or unfair and deceptive acts or practices in the business of insurance. The allegations in Count Three are substantially similar to those in Count Two, that Amica erroneously failed to cover the damage, with the additional allegation that Amica's "business practice of denying coverage for property damage claims involving oxidation of concrete is supported by its consistent refusal to cover such claims." *Id.* at ¶ 65. Amica argues that, like the Mazzarellas' claim for breach of the implied covenant of good faith and fair dealing, the Mazzarellas' CUTPA/CUIPA claim must fail in the absence of a viable breach of contract claim. *See* Mem. Supp. Amica's Mot. Dismiss, Doc. No. 38-1, at 25.

"To succeed on a CUTPA/CUIPA claim, a plaintiff must show that the defendant engaged in an act prohibited by CUIPA's substantive provisions, and that the act proximately caused the harm alleged." *Agosti*, at *8. The relevant CUIPA provision here is "the prohibition of unfair settlement practices." *Liston-Smith v. CSAA Fire & Cas. Ins. Co.,* 2016 WL 6246300 at *3 (D. Conn. Oct. 25, 2016). "A claim of unfair settlement practice under CUIPA/CUTPA requires the plaintiff to allege that the defendant has committed the alleged proscribed act with sufficient frequency to indicate a general business practice." *Id.* (internal quotations omitted). "Unfair settlement practices include 'not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.'" *Id.* (citing Conn. Gen. Stat. § 38a-816(6)(F)).

"The requirement that the insurer settle when the insured's liability is reasonably clear means that the existence of liability has to be substantially certain. Logically speaking, liability cannot be substantially certain where it plainly does not exist on the explicit … terms of the contract. Hence, if the defendant's interpretation of the policy's coverage limitation was correct, then the application of that interpretation cannot have constituted oppressive, unethical or unscrupulous conduct in violation of the statutes." *Id.* (citations omitted) (internal quotation marks omitted).

The Mazzarellas' CUTPA/CUIPA claim challenges Amica's denial of coverage under the insurance policy. Without any obligation to pay under the policy, however, Amica "'could not have violated CUIPA or CUTPA.'" *Id.* (citing *Wright v. State Farm Mut. Auto Ins. Co.,* 1997 WL 746434 at *4 (Conn. Super. Ct. Nov. 18, 1997)). Because the Second Amended Complaint fails to state a claim against Amica for breach of contract, I dismiss their claim for violation of CUTPA and CUIPA pursuant to Fed. R. Civ. P. 12(b)(6).

## IV. Conclusion

For the reasons set forth above, Amica's third Motion to Dismiss (doc. # 38) is **granted with prejudice** as it relates to any claimed damage to the concrete basement walls. To the extent that the Mazzarellas allege any damage that is not connected to the deterioration of the basement walls, the motion is **granted without prejudice**. The Mazzarellas may file a Third Amended Complaint alleging coverage for such damage within 30 days of this Order.

So ordered.

Dated at Bridgeport, Connecticut, this 8th day of February 2018.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge